KENNETH P. ROBERTS (SBN 74955)
STUART E. COHEN (SBN 213810)
MICHAEL B. SMITH (SBN 136762)
K.P. ROBERTS & ASSOCIATES,
A PROFESSIONAL LAW CORPORATION
6355 Topanga Canyon Boulevard, Suite 403
Woodland Hills, CA 91367
Telephone: (818) 888-3553

Attorneys for Plaintiff Indo-Phili, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDO-PHILI, INC., a California Corporation, ,<br><br>    Plaintiff,<br><br>    v.<br><br>CIRCLE K STORES INC., a Texas Corporation,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**1. Injunctive Relief and Damages for Violation of the PMPA (15 U.S.C. 2801 et seq.**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Plaintiff, Indo-Phili, Inc., a California corporation (hereafter "Indo-Phili") alleges as follows:

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATION OF THE PMPA (15 U.S.C. 2801 ET SEQ.)

## PARTIES

1. Indo-Phili is a California corporation with its principal place of business located in the City of Los Angeles, County of Los Angeles, California.

2. Indo-Phili is informed and believes and thereon alleges that Defendant, Circle K Stores Inc. ("Circle K"), is a Texas Corporation authorized to do business in California and conducting business in Los Angeles City and County, California and has a principal place of business in Tempe, Arizona.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 15 U.S.C. §2801 et seq. of the Petroleum Marketing Practices Act ("PMPA").

4. The Court has jurisdiction pursuant to 28 U.S.C. § 1367 over related state law claims involving the same parties and arising out of the same general set of facts and events giving rise to Indo-Phili's Complaint.

5. Venue is proper in the United States District Court for the Central District of California because the claims herein arise out of acts and/or omissions occurring in the County of Los Angeles and relate to real property located in the County of Los Angeles, California.

## GENERAL ALLEGATIONS

6. The present dispute arises out of Petroleum Franchise Agreements between Indo-Phili and Circle K and involves the petroleum franchise operated by Indo-Phili at franchised premises leased from Circle K located at 3950 West Olympic Blvd., Los Angeles, California (the "Olympic Station"). Indo-Phili operated a petroleum franchise at the Olympic Station, under terms of a Contract of Sale ("Supply Contract") and Station Lease agreement ("Station Lease") pursuant to which Indo-Phili was authorized to purchase from Circle K Mobil branded gasoline to the public. In addition, Indo-Phili operated the associated

1  convenience market and automated carwash located on the Service Station
2  premises, for Indo-Phili's own benefit and at its own expense.  Circle K was a
3  wholesale distributor who was authorized to distribute wholesale Mobil branded
4  gasoline to retail gasoline station dealers including Indo-Phili.

5       7.     The most current term of the Station Lease extends through March 19,
6  2025.

7       8.     A franchise under the Petroleum Marketing Practices Act, 15 U.S.C.
8  §2801 et seq., consists of the following three elements:  (i) a contract between a
9  distributor, such as Circle K, and a retailer, such as Indo-Phili pursuant to which
10 the retailer is authorized to use, in connection with the sale of motor fuel, (ii) a
11 trademark, such as Mobil, which is owned or controlled by a refiner pursuant to
12 which the retailer has authorized the refiner or a distributor to use in the sale of
13 motor fuel, **and** (iii) a contract or lease authorizing the retailer to occupy leased
14 marketing premises for marketing premises from which the retailer will sell the
15 authorized branded gasoline.  15 U.S.C. §2801(B).  The Station Lease and Supply
16 Contract between Indo-Phili and Circle K were PMPA franchise agreements.

17      9.     Termination and nonrenewal of Petroleum Franchises are governed by
18 the Petroleum Marketing Practices Act, 15 U.S.C. 2801 et seq. The PMPA
19 preempts all state laws which may otherwise apply to nonrenewal or termination of
20 a petroleum franchise or franchise relationship and is not the same as the PMPA,
21 including the notice of termination or nonrenewal of any PMPA franchise
22 agreement.  15 U.S.C 2806.

23      10.     On December 19, 2024, by Certified Mail – Return Receipt
24 Requested, Circle K sent a Notice of Nonrenewal of Franchise Pursuant to the
25 Petroleum Marketing Practices Act and notified Indo-Phili that the Franchise
26 Agreements, and the petroleum franchise relationship and franchise arising
27 thereunder … will not be renewed and will thereby terminate effective as of close

- 3 -
COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATION OF THE PMPA (15 U.S.C. 2801 ET SEQ.)

of business on March 19th, 2025 … pursuant to the PMPA." The reason stated in the Notice of Nonrenewal for such nonrenewal and termination was "Dealer's failure to agree to changes to the Station Lease. Specifically, Dealer failed to agree to an increase in his rent." Circle K cited 15 U.S.C. Section 2802(b)(3)(A) as the authority for the nonrenewal and termination of franchise relationship. A copy of the Notice of Nonrenewal is attached hereto as Exhibit "A".

11. The Notice was not served within 120 days of the date that Circle K claims that Indo-Phili failed to agree to changes in the petroleum franchise relationship and the franchise. The Notice was false because Indo-Phili did not fail to agree to the changes in the petroleum franchise agreement and specifically requested to sign the franchise agreement on December 20, 2024.

12. On or about December 19, 2024, Circle K, by its authorized representatives informed Indo-Phili that after looking into the rental and volume requirements set forth in the renewal Station Lease and Supply Contract and considering a possible conversion of the station to a commission style of operation, it would not be making a change in the rental or volume requirements and would not proceed with a change in the manner of operation and it was its intent to renew the franchise agreements (Station Lease and Supply Contract) and upon request of Indo-Phili gave Indo-Phili until December 20, 2024 to sign the agreements. On December 20, Indo-Phili advised Circle K that it would sign the agreements and requested that the documents be sent to it for electronic signature. In response, Circle K responded stating that although it had said it would give Indo-Phili until December 20 to sign the documents, it had changed its mind and Circle K would not allow Indo-Phili to sign franchise documents. The delay was caused by Circle K who repeatedly responded to Indo-Phili that it was looking into and "working" on the questions about rent and volume of fuel contained in the agreements and the possible conversion of the operation of the business to a commission style of

business operation.  Indo-Phili relied upon the statements of the authorized representative of Circle K and then on December 20 requested to sign the documents.  Circle K refused.  The one day difference was not material to the franchise or franchise relationship, was not so serious as to undermine the entire relationship of the parties and was, at best, a technical violation which Circle K relied upon in order to try to take over the operation of this station and convert it to a company operation.

13. Indo-Phili has been advised by Circle K that it intends to take over the premises and station and operate the station for its own benefit as a company operated station, convenience market and carwash.  Indo-Phili is informed and believes that Circle K had formed the intention and decision to try and take over the station and operated the service station for its own benefit as a company operation prior to offering Indo-Phili a renewal for the petroleum franchise (Station Lease and Supply Contract).

14. The grounds for nonrenewal and termination are governed by the PMPA.

## FIRST CAUSE OF ACTION
## WRONGFUL NONRENEWAL OF FRANCHISE/LEASE
## AND LEASE RELATIONSHIP

15. Indo-Phili incorporates the allegations of paragraphs 1 – 14 above as though set forth in full.

16. After receiving the proposed form of the renewal Station Lease and Supply Contract, Indo-Phili questioned and complained about the amount of the rental increase stating that it was higher than any other station and also required the sale of an excessively high volume of motor gasoline.  Indo-Phili asked if (i) the rent and volume called for in the new station could be reviewed and reconsidered, and (ii) if Circle K would consider converting the manner in which the station was

operated from a Lessee Dealer station (pursuant to which Indo-Phili historically had operated the franchise by purchasing Mobil branded gasoline from Circle K, the Distributor, and selling it as an authorized Mobil branded gasoline station) to an operation as a commissioned station under which Indo-Phili would sell Mobil gasoline for the benefit of Circle K at the retail price specified by Circle K and for Circle K's benefit and Indo-Phili would be paid a commission.  Circle K would also take over additional expenses of operation such as credit card fees and there would be no rental charged to Indo-Phili.  In return, Indo-Phili would operate the convenience market and carwash for its own benefit and at its own expense and receive a commission from Circle K on gasoline sold at the premises. In response, Circle K informed Indo-Phili that Circle K would look into this request and work on it and get back to Indo-Phili.  Circle K did not inform Indo-Phili of a date by which it would be required to sign the renewal Station Lease or renewal Supply Agreement.

17. Both orally and in writing Indo-Phili followed up and repeatedly inquired of the status of Circle K's review of the franchise terms and the possible conversion of the station to a commissioned dealer type of operation, and he was informed, orally, by Circle K's authorized employees and representatives that Circle K was continuing to look into the request and working on it and that it would get back to Indo-Phili.

18. The termination of the franchise and/or nonrenewal of the franchise relationship by Circle K was improper and wrongful and in violation of the PMPA.

19. Indo-Phili did not fail or refuse to agree to changes to the Station Lease and did not fail or refuse to agree to an increase in rent.  Indo-Phili specifically stated it would sign the Lease with the increased rent after finally being told that Circle K would not adjust the rent or the volume requirements following its many months of looking into it and working on it.  Circle K refused

to allow Indo-Phili to sign the Station Lease and Supply Contract. Even if, arguendo, Indo-Phili had not signed the documents timely, given the facts and events leading up to the nonrenewal and termination, such failure was only technical or unimportant to the franchise relationship and was not so material as to undermine the entire relationship and nonrenewal and termination was improper under the PMPA.

20. Pursuant to 15 U.S.C. 2805, Indo-Phili requests this Court issue it's temporary restraining, preliminary and permanent injunction enjoining nonrenewal of the petroleum franchise, Station Lease and Supply Contract, and franchise relationship and mandating Circle K to present the franchise renewal documents to Indo-Phili for execution.

21. Indo-Phili believes that it has and will be damaged by the actions of Circle K's wrongful failure to renew and termination of the petroleum franchise. Station Lease and Supply Contract, and franchise relationship in an amount to be proven at the time of trial.

22. The acts and conduct of Circle K are unlawful and willful and exemplary damages are requested pursuant to 15 U.S.C. 2805.

## DEMAND FOR JURY TRIAL

23. Indo-Phili hereby demands a jury trial as provided by Rules 39(a) and 38(b) for the Federal Rules of Civil Procedures as to all issues or claims pertaining to the Complaint.

WHEREFORE, Indo-Phili prays for judgment as follows:

1. For the Court's Order granting temporary restraining order, preliminary and permanent injunction enjoining the nonrenewal and termination of the Station Lease and Supply Contract.
2. For the Court's Order granting Mandatory Injunctive compelling

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF THE PMPA (15 U.S.C. 2801 ET SEQ.)

1  Circle K to provide the Station Lease and Supply Contract, and related
2  documents, to Indo-Phili for execution extending the term of the
3  franchise and franchise relationship for a term of not less than three
4  years in accordance with the provisions of the PMPA.

5  3. For the Court's Order enjoining Circle K from refusing to supply
6  Mobil branded gasoline to Indo-Phili during the pendency of the
7  litigation of this Complaint.

8  4. For damages according to proof at trial.

9  5. For costs of suit including reasonable attorney's fees and costs and
10  expert witness fees and costs.

11  6. For such other and further relief as the Court deems just and proper.

12  Dated: March 5, 2025.                K.P. ROBERTS & ASSOCIATES, APLC

15  By: /s/ Kenneth P. Roberts
16  KENNETH P. ROBERTS,
    Attorney for Plaintiff
17  Edwards and Anderson, Inc.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATION OF THE PMPA (15 U.S.C. 2801 ET SEQ.)